UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LADERICK LAMONTRAY DEON JOHNSON   CIVIL ACTION NO. 17-cv-0939
#619597

VERSUS                             JUDGE ELIZABETH E. FOOTE

JEFF LANDRY                        MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Laderick Johnson ("Petitioner") of armed robbery, and he was given a 15-year sentence. His conviction and sentence were affirmed on appeal. State v. Johnson, 182 So.3d 1039 (La. App. 2d Cir. 2015), writ denied, 190 So.3d 1190 (La. 2016). He also filed two post-conviction applications, both of which were denied by the trial court.

Petitioner next filed this federal petition for habeas corpus relief. He listed as claims (1) ineffective assistance of counsel for not striking a juror who was Petitioner's high school teacher (and was chosen as the jury foreman), (2) the trial court denied a motion to suppress identification evidence, and (3) the trial court erred by closing the case before ruling on his motion for new trial.

The court issued an order (Doc. 9) and pointed out that Petitioner did not exhaust his state court remedies with respect to the ineffective assistance of counsel claim because he did not pursue it beyond the trial court level. Petitioner elected to dismiss that claim

and move forward with the exhausted claims.[1]  Doc. 12.  For the reasons that follow, it is recommended that the petition be denied.

**Background Facts**

Shreveport police were dispatched to the GameStop store on Youree Drive shortly after noon one day in August 2013.  Devin Dodson, the clerk on duty, reported an armed robbery.  Surveillance video showed a man wearing a gray Minecraft shirt and a red baseball cap enter the store.  Ms. Dodson said that the man walked around the store, then approached the counter and attempted to purchase some games.  A couple of the games were rated M for mature, so Ms. Dodson asked the man for identification to prove that he was at least age 17.  The man said that he left his identification in his car, and he left to retrieve it.  When he returned, he waited for another customer to complete her purchase, then presented his identification.  Ms. Dodson said that she looked at the year of birth, which she recalled was 1984 (the same as her fiancé's) and compared the photo to the man's face to make sure it was the same person.

Ms. Dodson returned the man's ID.  He reached back as if to get his wallet, but he pulled what appeared to be a large caliber handgun and demanded all of the money in the

---

[1] Petitioner filed his federal petition on a pre-printed form that he mailed to the clerk of court.  The clerk scanned an image of the petition, and the image is now the official record.  The image is missing pre-printed page 9, which is the page on which Ground 3 would be listed.  The claims discussed above were listed in the spaces for Grounds 1, 2, and 4.  The clerk of court was asked to check the original paper submission to determine whether page 9/Ground 3 had been omitted from the scanned image, but the petition filed in 2017 was apparently destroyed pursuant to the court's administrative policy that requires retention for only six months.  Petitioner has made subsequent filings (e.g., Docs. 12 and 20) that refer only to the three claims listed above.  Thus, it appears that the "missing" page 9 was missing from the original paper filing and that no asserted claim has been overlooked.

cash register, the four video games he selected, and a pair of Beats by Dre headphones. Ms. Dodson had to get a stool to retrieve the headphones, but she complied with all demands and bagged the items. The man told Ms. Dodson to have a nice day and then left the store.

Fingerprints on two of the game boxes allowed police to quickly identify Petitioner as the suspect. Sgt. Jack Miller interviewed Ms. Dodson at her home later that afternoon. He showed her a six-photo lineup, but she was unable to identify anyone from it. Miller then showed Ms. Dodson Petitioner's driver's license photograph, and she immediately identified it as the picture she had seen on the license handed to her by the robber.

Police in Plano, Texas spotted a stolen vehicle in the parking lot of a Super 8 motel and traced it to Petitioner, who was staying in the motel. He was arrested. Items in the car included a gray Minecraft t-shirt, a red baseball cap, the four video games that were stolen, a pair of Beats headphones, and empty packaging of a BB gun. Police found the gun itself, which resembled a .45 caliber handgun, in Petitioner's motel room.

Sgt. Miller, Ms. Dodson, and crime scene investigators testified at trial. Defense counsel said that he had discussed with Petitioner his right to testify, and Petitioner wished to take the stand. Petitioner began by apologizing and saying that he was going through a lot at the time because he had a pretty bad drug addiction. He said he did not think he was guilty of armed robbery because one of the elements was being armed with a dangerous weapon, and he did not believe the toy gun he got from his nephew satisfied that element. On cross-examination, Petitioner admitted that it was him on the surveillance video and that he robbed the GameStop. He was presented with the gun found in his possession, and

he admitted that it was the one used in the robbery. He also admitted that it was a semiautomatic BB pistol and not just a toy or fake. The jury returned a 10-2 verdict of guilty.

**Denial of Motion to Suppress Identification**

A two-step process governs the admissibility of identification evidence: First, a court must determine whether the pretrial identification was impermissibly suggestive. If it was, then second, a court must determine whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification. Coleman v. Quarterman, 456 F.3d 537 (5th Cir. 2006). The Supreme Court has identified several factors to help determine the likelihood of misidentification: (1) the opportunity of the witness to view the criminal at the crime scene; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Coleman, supra, citing Neil v. Biggers, 93 S.Ct. 375 (1972). Unless the circumstances show "a very substantial likelihood of irreparable misidentification" then the identification is admissible, and its weight is for the jury to decide. Manson v. Brathwaite, 97 S.Ct. 2243, 2254 (1977).

Judge Katherine Dorroh, the trial judge, held a pretrial hearing on Petitioner's motion to suppress evidence of a single-photo identification and any attempted in-court identification. Sgt. Miller testified about how he put together the six-photo lineup and how he administered the victim the standard admonitions. He testified that the victim pointed to three pictures, including one of Petitioner, but she just identified certain characteristics

of the robber. With respect to the photo of Petitioner, she said that his face looked "too round." She did not make a selection.

Miller then elected to show the victim Petitioner's driver's license photo since she had studied the photo earlier that day. She looked at it, got a little emotional, and said that was the ID photo she studied just before the robbery.

The State conceded that a single photo was suggestive in nature, but it argued that the identification was nonetheless admissible based on an assessment of the other factors from Manson that made the identification reliable. The robber was in the well-lit store for several minutes, the witness gave an accurate general description of the robber, the witness was quite certain in her identification, and the identification took place the same day as the robbery.

The judge denied the motion to suppress. She reasoned that what happened was not really a lineup. The detective had asked the victim if this was the photo ID picture that she looked at in the store, and she said it was. At trial, the prosecutor had Ms. Dodson describe the robbery and the robber. She was then asked if she saw the robber in the courtroom, and she identified Petitioner. She was then asked if Sgt. Miller showed her a single photo, if she identified a person based on that photo, and if the person she identified was the same as the man she identified in court. She answered yes to all three questions. On cross-examination, defense counsel asked Ms. Dodson about the six-photo lineup and her inability to identify the robber from among those persons.

Petitioner seeks habeas relief based on the trial court's denial of his motion to suppress. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). When a state court has denied a claim on the merits, the AEDPA bars habeas relief unless the prisoner shows that the state court "erred so transparently that no fairminded jurist could agree with that court's decision." Bobby v. Dixon, 132 S.Ct. 26, 27 (2011) (per curiam).

The trial judge denied the motion to suppress for the reasons discussed above. Petitioner also raised the argument on direct appeal. The appellate court cited Manson and Biggers and set forth the relevant factors. The court concluded that the trial court did not err in denying the motion to suppress. Although Ms. Dodson was unable to identify Petitioner from the six-photo lineup, application of the Manson factors, taken together, created little opportunity for misidentification. The court noted the ample opportunity for the witness to view Petitioner before and during the crime in a well-lit store. She also looked at his driver's license long enough to read the date of birth and to ensure that he was the same person as pictured in the photograph. She also gave Sgt. Miller an accurate description of the robber. The court found that her inability to identify Petitioner from the photo line-up was not determinative of improper suggestion or an unlawful risk of misidentification at a later in-court identification. The appellate court reasoned, in the

alternative, that any error by the trial court in denying the motion to suppress was harmless error in light of the surveillance footage and Petitioner's being found in possession of the items stolen from the store, the clothing worn by the robber, and the empty BB gun packaging. State v. Johnson, 182 So.3d at 1052-53.

The state court's decision on this issue was an entirely reasonable application of the guiding legal principles to fairly undisputed facts. The assessment of the merits, as well as the determination of harmless error, had a sound basis in law and fact. It certainly cannot be said that no fairminded jurist would agree with the state court's decision. The State also argues that the claim was not adequately briefed, does not state a federal basis, is conclusory, was not exhausted, and is procedurally barred, but the court need not address those defenses because the claim fails on the merits. Habeas relief is not permitted on this claim.

**Closing Case before Ruling on Motion for New Trial**

Petitioner filed a pro se motion for new trial, on grounds of ineffective assistance of counsel, a few days before his sentencing hearing. At the hearing, counsel informed the court that he had filed on that day a motion for post-verdict judgment of acquittal based on insufficient evidence. Neither counsel nor Petitioner, who was present at the hearing, informed the court of the recently filed pro se motion for new trial. The court recessed to consider counsel's motion, denied the motion, then proceeded to sentencing after the defense waived a 24-hour delay that ordinarily applies after a motion has been denied. The court then imposed sentence.

Petitioner complained on direct appeal that the judge committed a procedural error by sentencing him before his motion was addressed. The appellate court stated that the failure of a trial court to rule on a motion for new trial ordinarily is reversible error, but Petitioner was not prejudiced by the mistake in this case. Vacating and remanding "would result in a useless waste of judicial resources" because the motion was based on ineffective assistance of counsel, which is not a proper ground for new trial, and Petitioner and his attorney could have informed the judge of the motion at the sentencing but did not do so. State v. Johnson, 182 So.3d at 1057-58.

This claim is based on an argument that the trial judge did not follow Louisiana Code of Criminal Procedure Article 853(A) ("a motion for a new trial must be filed and disposed of before sentence"). The habeas statute provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011). A district court, for these reasons, rejected a similar habeas claim. Anderson v. Cain, 2006 WL 2591019, *7 (E.D. La. 2006). This claim should be denied for lack of a federal basis.

The State argues that the claim should also fail because it was inadequately briefed, is conclusory, and was arguably not exhausted. The court need not address those defenses because the claim plainly lacks merit. Habeas relief is not available even if Petitioner is correct on his state law arguments.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14)

days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 16th day of July, 2020.

Mark L. Hornsby
U.S. Magistrate Judge